IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs December 5, 2007

**PETER GRAVES v. STATE OF TENNESSEE**

**Direct Appeal from the Circuit Court for Weakley County**
**No. CR114-2006    William Acree, Judge**

---

**No. W2007-01045-CCA-R3-PC  - Filed February 22, 2008**

---

A Weakley County jury convicted the Petitioner, Peter Graves, of possession of both a schedule II and a schedule IV drug with intent to sell or deliver, and the trial court sentenced him to an effective sentence of fifteen years. The Petitioner filed a petition for post-conviction relief, which the post-conviction court denied. The Petitioner now appeals, claiming: (1) he was denied the right to a fair trial because the jury saw him in handcuffs and shackles; (2) he was denied the right to a fair trial because the trial court did not conduct a jury out hearing when jurors wanted to ask him questions; and (3) he was not afforded the effective assistance of counsel. Upon a thorough review of the record and applicable law, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J. and DAVID G. HAYES, J., joined.

Danny H. Goodman, Jr., Tiptonville, Tennessee, for the Petitioner, Peter Graves.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; Jennifer L. Smith, Associate Deputy Attorney General; Thomas A. Thomas, District Attorney General, for the State of Tennessee.

**OPINION**

**I.  Facts**

In 2004, the Petitioner was found guilty of two offenses: (1) possession of .5 grams or more of a Schedule II controlled substance (cocaine) with intent to manufacture, deliver or sell; and (2) possession of not less than half an ounce nor more than ten pounds of a Schedule VI controlled substance (marijuana) with intent to sell or deliver. The trial court sentenced him to an effective sentence of fifteen years in prison. The evidence presented in that case, as summarized by this

Court, included:

At trial, Officer Jason Arant of the Martin Police Department testified that he and Investigator Randall Walker were in a patrol car the afternoon of October 17, 2003, when the Defendant drove by them. Officer Arant recognized the Defendant, and he suspected the Defendant had an outstanding warrant. After contacting the police dispatcher, who confirmed that the Defendant was indeed wanted for probation violation, Officer Arant and Investigator Walker began looking for the Defendant, whom they quickly found nearby. The two officers observed what "appeared to be the same vehicle" they witnessed the Defendant driving just minutes earlier, parked on the side of a dead-end road, facing the wrong direction. As the officers approached the car, they observed that the driver's side door was open, there was a juvenile sitting in the front seat on the passenger side, the Defendant was sitting in the middle of the front seat, and an unidentified woman was seated near the driver's seat either very close to the Defendant or partially on his lap.

As Officer Arant approached the vehicle, the woman exited and walked into a nearby house. The Defendant also exited the vehicle, but as he did he "made a gesture" in which his shoulder dipped, which Officer Arant believed indicated the Defendant "was throwing something under the vehicle." As Officer Arant was attempting to place the Defendant into handcuffs, the Defendant "put his left hand into his left pocket and brought it back out ... and transfer[ed][an] object from his left hand to his right hand, and thr[ew] it down on the ground." After the Defendant was secured, Officer Arant retrieved the object he witnessed the Defendant drop, which he discovered to be a plastic bag containing rocks of crack cocaine, each individually packaged in other plastic bags.

Officer Arrant also testified that in a search incident to the Defendant's arrest, he and Investigator Walker found two bags of marijuana in the car, one under the front seat and one in the glove box, and $520 on the Defendant's person. Additionally, as the car was towed away, another bag of marijuana was discovered on the ground where the vehicle had been parked. On cross-examination, Officer Arant stated he believed the juvenile, who was under observation the entire time, never had an opportunity to dispose of the marijuana found under the car, but conceded the woman may have. Officer Arant also stated that the juvenile passenger was released after he was questioned and searched, and the unidentified woman was never questioned.

The vehicle the Defendant was in at the time of his arrest was not properly registered. However, Officer Arant testified that the person whose name it was still titled under had relinquished all ownership of the vehicle, and the new owner failed to register it. Officer Arant also testified that the Defendant told him he had paid $100 for the car. The license plate on the vehicle was registered to the Defendant's

brother, Chet Graves. No one had claimed the vehicle as of the date of the trial.

Investigator Randall Walker testified that he also saw the Defendant drive by in the same vehicle in which he was eventually found, and that the unidentified woman who was sitting in his lap left the car and walked into a house when he arrived at the scene. Jessica Webb of the Tennessee Bureau of Investigation Forensic Chemistry Section was certified by the trial court as an expert witness in the area of forensic science. Ms. Webb testified that the illegal substances submitted to her lab were determined to be 1.1 grams of cocaine and 43.1 grams of marijuana.

The Defendant's testimony at trial varied from the testimony of the police officers on several key points. The Defendant denied that he drove by the officers in a car before his arrest. He testified that the vehicle he was in at the time of his arrest did not belong to him. The Defendant claimed that the cash found in his pocket was from his girlfriend and was for their rent. He denied that he threw anything on the ground. The Defendant also stated that the woman, whom he did not know, did not walk into a house, but rather drove off in a car with other people. The Defendant also insisted there were "six police cars" at the scene when he was arrested, and that officer Arant lied when he testified that he saw the Defendant throw the cocaine on the ground. According to the Defendant's testimony, he was in his mother's boyfriend's house when the unidentified woman asked him to come sit by her in the car. He did not know whose vehicle it was, or who had been driving it because it was parked when he came out of the house. The Defendant stated he had just sat down in the car when the police arrived. The Defendant further testified that he believed the woman must have dropped the drugs found on the ground.

*State v. Peter Graves*, No. W2004-01525-CCA-R3-CD, 2005 WL 1683501 (Tenn. Crim. App., at Jackson, Jul. 19, 2005) (footnotes and citations omitted), *perm. app. denied* (Tenn. Dec. 27, 2005).

At the post-conviction hearing, the following evidence was presented: the Petitioner, an African-American man, testified that there were no African-American jurors in his jury pool but that his attorney told him "not to worry about it."[1] He also stated that, when he re-entered the courtroom from being on break, the jury saw him wearing leg shackles and handcuffs. He said this incident happened before the trial began, and the trial court informed the jury why the Petitioner wore the shackles. Moreover, the Petitioner stated that his trial counsel did not make any objections to the jury seeing him in shackles. The Petitioner said he had one attorney representing him prior to the trial, but he had a different attorney ("Counsel") representing him at trial. The Petitioner stated that he told Counsel about a witness, the Petitioner's landlord, but Counsel never subpoenaed the witness, claiming that he could not locate the witness. The Petitioner said the witness would have explained why the Petitioner was carrying a lot of money when he was arrested. The Petitioner then

---

[1] At the post-conviction hearing, the Petitioner argued that the racial composition of his jury pool was unconstitutional. This issue, however, was not raised on appeal. Therefore, this issue is waived. T.C.A. § 40-30-106(g).

testified that the jurors asked him questions, but the court did not hold a jury out hearing for the parties to discuss these questions before the Petitioner answered them.

On cross-examination, the Petitioner stated that he expected the landlord to explain why the Petitioner had a money order for $520. The Petitioner did not want his girlfriend, who gave him the money order to pay the rent, to testify because "she was fixing to graduate from college . . . . And she would have been missing her test, take her test and graduate." When asked if he felt any question asked by a juror was particularly problematic, the Petitioner responded, "No, I didn't have no problem with but I didn't feel like they could just ask me questions, like – I didn't know if they could ask me questions." [sic]. The Petitioner then clarified that he thought the jury's question asking where the money came from was prejudicial, although he admitted that he "didn't have no [sic] problem with [answering the question] at the time."

Pam Belew, Weakley County Circuit Court Clerk, testified about jury panel selection and how the jurors are chosen randomly based on a list of people with driver's licenses in the county. On cross-examination, Belew further discussed that the clerk's office manually picks the jurors from slips of paper.

Counsel testified that he visited the Petitioner in jail three to four times, and he did not recall why he took the case over from the Petitioner's prior attorney. Counsel stated the Petitioner was initially "adamant that he did not want to testify," but, at trial, the Petitioner decided he would testify. Counsel explained he did not object or raise an issue about the jury seeing the Petitioner in leg shackles or handcuffs because "[m]erely catching a glimpse of the defendant in shackles has never in the State of Tennessee been [cause] for any kind of justiciable problem." Counsel then cited two cases in support of his legal proposition.[2] Counsel stated that he did not remember the questions the jury members asked the Petitioner, and he also did not remember the Petitioner making an issue of the racial composition of the jury pool. He subpoenaed the Petitioner's landlord the day before trial; he would have done so earlier, but the day before trial was when the Petitioner finally gave him the landlord's name and contact information.

On cross-examination, Counsel clarified that, while he received the landlord's information late, he did not ask for a continuance because he thought the motion would be "frivolous." Counsel also explained that the landlord would have testified only to the amount due for rent, which would explain why the Petitioner had so much money when he was arrested with drugs. Counsel then testified that the Weakley County population was roughly seven percent African-American. When discussing the fact that the jury saw the Petitioner in shackles, he said, "I can say however, that there are many times, . . . the majority of the time I want my jurors to know that my client is in jail and the longer that my client has been in jail the more I want that jury to know that he's been in jail." Counsel then explained that he did not ask the trial court for a bench conference about the jury's questions for the Petitioner because they "seemed innocuous enough."

---

[2] *Holbrook v. Flynn*, 475 U.S. 560 (1986); *Illinois v. Allen*, 397 U.S. 337 (1970).

4

After hearing this testimony, the post-conviction court denied relief. The Petitioner now appeals from that decision.

## II. Analysis

On appeal, the Petitioner claims: (1) he was denied the right to a fair trial because the jury saw him in handcuffs and shackles; (2) he was denied the right to a fair trial because the trial court did not conduct a jury out hearing when jurors wanted to ask him questions; and (3) he was not afforded the effective assistance of counsel.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2006). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999); *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997). A post-conviction court's factual findings are subject to a de novo review by this Court; however, we must accord these factual findings a presumption of correctness, which can be overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely de novo review by this Court, with no presumption of correctness. *Id.* at 457.

### A. Handcuffs and Shackles

The Petitioner claims he was denied a fair trial because the jury saw him in handcuffs and leg shackles. The Petitioner also claims that his trial counsel was ineffective for failing to object when the jury saw him in handcuffs and leg shackles, an issue that we shall address in part "C" of our analysis.

As a "free-standing" claim, this issue is waived as a ground for post-conviction relief because it was not presented on direct appeal:

> A ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented unless: (1) the claim for relief is based upon a constitutional right not recognized as existing at the time of trial if either the federal or state constitution requires retroactive application of the right; or (2) the failure to present the ground was the result of state action in violation of the federal or state constitution.

T.C.A. § 40-30-106(g) (2006). The Petitioner is not entitled to relief on this issue.

## B. Jury-Out Hearing

The Petitioner raises as his second issue that the trial court failed to conduct a jury-out hearing when the jury members wanted to ask him questions directly. He cites the Tennessee Rules of Criminal Procedure, which states that "the court may permit a juror to ask a question of a witness," but that "[t]he judge shall review all such questions and, outside the hearing of the jury, shall consult the parties about whether the question should be asked." Tenn. R. Crim. P. 24.1(c).

Concerning this issue, it is unclear from the Petitioner's brief whether he complains of error by the trial court or the ineffective assistance of Counsel in failing to object to the procedure used by the trial court. We will address both contentions. The Petitioner's claim of trial court error is waived because he failed to present the issue on direct appeal. *See* T.C.A. § 40-30-106(g).

In the alternative, if the Petitioner is also alleging that Counsel was ineffective for failing to object to the procedure used by the trial court, then the Petitioner must meet the *Strickland* test:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989). We fail to see how the Petitioner was prejudiced. As part of his opening argument, the Petitioner's post-conviction counsel read from the trial transcript the questions the jury members asked the Petitioner: (1) "where did you go when you got out of the car?"; (2) "why were you parked at this location?"; (3) "why were you paying the rent with a money order rather than cash?"; and (4) "the girl in the car said there's something you need to . . . know, what was it you needed to know?" While on the stand, the Petitioner admitted that he had "no problem" answering the jurors' questions. Additionally, Counsel testified that he thought the questions were "innocuous enough." Nothing in the Petitioner's brief shows prejudice, and there is nothing to suggest that Counsel's failure to insist on a jury-out hearing was deficient. The Petitioner is not entitled to relief on this issue.

## C. Ineffective Assistance of Counsel

The Petitioner's last claim is one of ineffective assistance of counsel, specifically focusing on Counsel not presenting the landlord as a witness at trial, and claiming that Counsel failed to object when the Petitioner was seen in restraints by the jury.

The right of a criminally accused to representation is guaranteed by both the Sixth

Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687; Melson, 772 S.W.2d at 419.

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Strickland*, 466 U.S. at 688 (1984)).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland,* 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. *Strickland,* 466 U.S. at 690; *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. *House*, 44 S.W.3d at 515 (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)). However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation. *House*, 44 S.W.3d at 515.

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994).

The Petitioner alleges that Counsel was deficient because he failed to properly prepare for the case, and he failed to find and subpoena the Petitioner's landlord as a witness for the trial. In its order, the post-conviction court discussed its finding that Counsel adequately represented the Petitioner:

> The [c]ourt finds that the petitioner's trial attorney thoroughly prepared this case for trial. Furthermore, the fact that the landlord was not served and present at the trial was not the fault of the trial counsel. In addition, the probative value of the testimony was insignificant and would not have [affected] the outcome of the trial.

We agree with the post-conviction court that Counsel was prepared and that the fault of the landlord not being called as a witness lay with the Petitioner. The Petitioner had not given Counsel adequate contact information for the landlord in time to ensure his appearance at court. Moreover, even if the landlord had testified, his recitation of the amount owed for rent would not negate the fact that the Petitioner was found with a marketable quantity of drugs on him. Further, Counsel's decision to not request a continuance was tactical in nature.

Concerning the Petitioner's claim that Counsel was deficient because he failed to object when the jury saw him in handcuffs and leg shackles, we conclude that the record before us does not satisfy the prejudice prong of the Petitioner's claim. The evidence presented at the post-conviction hearing did not establish that the jury was in any way affected in their deliberations or in any manner by the alleged incident. The Petitioner has not met his burden of proof and is not entitled to relief on this issue.

### III. Conclusion

After considering the facts of this case and the applicable law, we affirm the judgment of the trial court.

_____

ROBERT W. WEDEMEYER, JUDGE

8